IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY BELOT and ILONA BELOT, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 14-cv-9204 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| LTF CLUB OPERATIONS COMPANY, | ) |
| INC., and LIFETIME FITNESS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

The Court grants Defendants' motion for summary judgment [33]. Civil case terminated.

## STATEMENT

This case concerns claims of premises liability and loss of consortium related to plaintiff Gary Belot's ("Plaintiff")[1] trip and fall at Lifetime Fitness, a gym owned and operated by LTF Club Operations Company, Inc. (collectively "Defendants").

## FACTS

During the summer of 2013, Plaintiff received a guest pass to Lifetime Fitness in the mail. (Defs.' Facts [Dkt. # 35] ¶ 12.) The pass came with certain restrictions, however: by its plain terms (written on the back of the pass), it required guests to present a photo ID and take a "Center Tour with [a] Member Engagement Advisor" before gaining access to the gym. (*See Id.* ¶ 14, Ex. D.)[2] Nonetheless, on July 25, 2013, Plaintiff took it upon himself to enter the gym and

---

[1] Technically, Plaintiff is suing for negligence, whereas his wife Ilona Belot is suing for loss of consortium. For narrative ease the Court will use the term "Plaintiff" in the singular.

[2] Plaintiff disputes this fact by suggesting that the pass does not state the above conditions "on its face," and that, in any event, the fact is immaterial. (Pl.'s Resp. Defs.' Facts [Dkt. # 36] ¶ 15.) Not so. The conditions on the guest pass are material to Plaintiff's status as an invitee/trespasser

explore on his own. (*Id.* ¶ 18.) Although there was no one at the front desk when he first entered, Plaintiff waited there only three minutes, after which he went to the locker room, without presenting a photo ID or taking a tour with a membership consultant, and indeed without even notifying *any* gym employee of his presence. (*Id.*; Pl.'s Dep. [Dkt # 35, Ex. C] 50:19-51:2.)[3] Shortly thereafter, while trying to get on an elliptical machine, he tripped and fell over a set of electrical cords and conduits that were on the floor, (Pl.'s Resp. Defs.' Facts [Dkt. # 36] at ¶¶ 9-10), which he claims to have caused permanent injuries, (Compl. [Dkt. # 1-1] at 3). Defendants now move for summary judgment on both of Plaintiff's claims: negligence/premises liability (Count I) and loss of consortium (Count II).

## **LEGAL STANDARD**

Summary judgment is appropriate where the admissible evidence shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A 'material fact' is one identified by the substantive law as affecting the outcome of the suit." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A 'genuine issue' exists with respect to any such material fact, and summary judgment is therefore inappropriate, when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

(as discussed in the analysis section). Moreover, in disputing this fact, Plaintiff refers broadly in his response to "Exhibit B," which is his 149-page deposition transcript. He does not, however, pin cite any testimony, which violates Local Rule 56.1's requirement that a party who disputes a fact must "make specific reference" to supporting exhibits. *See* L.R. 56.1; *see also Jeralds v. Astrue*, 754 F. Supp. 2d 984, 985 (N.D. Ill. 2010) (explaining that judges are not "archaeologists searching for treasure" in a party's presentation of the record). Accordingly, Defendants' paragraph 14 is deemed admitted because it is otherwise supported by the record (namely, an exhibit containing an actual guest pass from June 2013 and deposition testimony from Defendants' former manager confirming that the above conditions were standard on guest passes).

[3] Plaintiff objects to this paragraph as immaterial, but it is similarly relevant to his status as a trespasser, as discussed below.

party.'" *Bunn*, 753 F.3d at 681-82 (citing *Anderson*, 477 U.S. at 248). Conversely, "where the factual record taken as a whole could *not* lead a rational trier of fact to find for the nonmoving party, there is nothing for a jury to do." *Id. at* 682 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original)). In determining whether a genuine issue of material fact exists, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Id.* (citing *Anderson*, 477 U.S. at 255).

## ANALYSIS

**I.    Count I – Negligence/Premises Liability**

To succeed on a claim for negligence in Illinois, "the plaintiff must prove that the defendant owed a duty, that the defendant breached that duty, and that the defendant's breach was the proximate cause of injury to the plaintiff." *Am Nat'l Bank & Trust Co. of Chi. v. Nat'l Adver. Co.*, 594 N.E.2d 313, 318 (Ill. 1992). In that respect, Defendants argue that there was either no breach, since the cord and conduit were open and obvious, or that there was no duty of reasonable care, given that Plaintiff was a trespasser. Because the Court finds that Plaintiff was indeed a trespasser when he fell, it will confine its discussion to that issue only.

**(A)**    *Plaintiff's Status as a Trespasser*

Under Illinois law, the duty a landowner owes to a person on the land depends upon that person's status, such as invitee or trespasser.[4] *Rhodes v. Ill. Cent. Gulf R.R.,* 665 N.E.2d 1260, 1268 (Ill. 1996). This is a question of law where, as here, the pertinent facts are not disputed. *Basham v. Hunt*, 773 N.E.2d 1213, 1224 (Ill. App. Ct. 2002). "A person is an invitee if (1) he

---

[4] For invitees, landowners owe them a duty of "reasonable care under the circumstances." 740 Ill. Comp. Stat. § 130/2. For trespassers, however, a landowner need only refrain from willful and wanton conduct. *Roland v. Langlois,* 945 F.2d 956, 959 (7th Cir. 1991). The parties do not suggest that Plaintiff was a licensee, and, in any event, the duty of care owed by landowners to invitees and licensees is the same under Illinois law. *See* 740 Ill. Comp. Stat. § 130/2.

enters the premises of another by express or implied invitation; (2) his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land; *and* (3) there is a mutuality of benefit or a benefit to the owner." *Blakely v. Camp Ondessonk*, 38 F.3d 325, 327-28 (7th Cir. 1994) (citation omitted). "A trespasser is a person who enters the premises without permission, invitation or other right, and intrudes for some purpose of his own, or at his convenience, or merely as an idler." *Id.* (citation omitted). Importantly, a person's status is determined at the time of injury, not entry. *Roland*, 945 F.2d at 959. (citation omitted).

At first blush, Plaintiff was arguably an invitee when he entered the gym: he received a guest pass in the mail, which was an express invitation, and the purpose of that invitation was ultimately to enroll him as a gym member, which is directly related to Defendants' business. But invitees may nonetheless lose their status and become trespassers when, after being invited onto the premises, they go to an area beyond the scope of an invitation or otherwise deviate from conditions of that invitation. *See Cockrell v. Koppers Indus., Inc.,* 667 N.E.2d 676, 680 (Ill. App. Ct. 1996); *Rodriguez v. Norfolk & W. Ry. Co.*, 593 N.E.2d 597, 611 (Ill. App. Ct. 1992); *see also Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 912 (7th Cir. 1985) ("[T]he mere fact that you invite people onto your property for a fee does not make them business invitees on the rest of the property."). This is precisely what Defendants suggest happened: Plaintiff exceeded the scope of his invitation when he took it upon himself to explore the gyms, and the Court agrees.

The scope of Plaintiff's invitation was set by the conditions on the pass: he was invited *only* to the extent that he presented a photo ID and took a membership tour. Thus, he became a trespasser the second he walked passed the front desk and ignored the check-in and membership

4

tour process. This conclusion is strengthened by considering the purpose for which the invitation was extended. *See Blakely*, 38 F.3d at 327-28 (7th Cir. 1994); *see also* Restatement (Second) of Torts § 332 ("In determining whether an invitee exceeded the scope of an invitation, the purpose of the which the land is held open, or the particular business purpose for which the invitation is extended, is of great importance."). The business purpose for this invitation was clearly to provide Defendants with an opportunity to increase enrollment. (*See* Defs.' Facts ¶¶ 14-15; *see also id.* Ex. D at 9:16-19; 12:9-19; 16:20-24-17:1-4.) Yet it is undisputed that Plaintiff failed to check in,[5] make any payment to the gym, take a tour with a membership consultant, or otherwise notify an employee of his presence. (*See* Pl.'s Resp. Defs.' Facts [Dkt. # 36] ¶ 18.) Defendants were thus denied the opportunity to meet with Plaintiff, give him a tour of the club, point out the benefits of membership, etc. In other words, Defendants had no opportunity to make a sales pitch, whereas the terms of the invitation make it clear that a sales pitch, or membership tour, was part of the package.

In failing to comply with the terms of the invitation, Plaintiff undermined the business purpose of the guest pass, as well as its specific terms and conditions. Accordingly, the Court finds that Plaintiff exceeded the scope of Defendants' invitation, making him a trespasser when he fell. *See Blakely,* 38 F.3d at 327 (similarly finding that the plaintiff was a trespasser on a camp ground, despite it being open to the public and heavily advertised as such, because she "did not enter through the main entrance, did not register with the front office, [and] did not pay a fee"); *Soucie v. Drago Amusements Co.*, 495 N.E.2d 997, 999 (Ill. App. Ct. 1986) (holding as a matter of law that the plaintiff lost her status as an invitee and became a trespasser when she wandered

---

[5] Although no one was at the front desk when Plaintiff entered the gym, he does not argue that the absence of front-desk personnel somehow alters the analysis of his status as a licensee/trespasser.

from the public area of a carnival in into an open trailer behind one of the rides, even though (1) the area was easily accessible and other patrons were seen walking in or around the trailer, and (2) there were no signs or other deterrents to entry).

Plaintiff's perfunctory attempt to avoid this conclusion is unpersuasive. Citing *Rhodes* (above), he broadly characterizes the guest pass as carte blanche to explore the gym, since its purpose was to bring in new business. But *Rhodes* is inapposite, insofar as it did not concern the scope of any invitation or guest pass to a place of business, *see* 665 N.E.2d at 1268; and it is undisputed that the guest pass Plaintiff received contains express conditions for the invitation, which he did not satisfy. Thus, while Plaintiff may have had Defendants' express consent to *enter* the gym, nothing in the record suggests that he had permission to bypass the front desk, ignore Defendants' policies, and exercise as he saw fit. He was therefore a trespasser as a matter of law at the time of his accident.

**(A)**  *The Duty Owed: Refraining from Willful and Wanton Conduct*

Because Plaintiff was a trespasser, Defendants owed him only a duty to refrain from willful and wanton conduct, which the Illinois Supreme Court explains as follows:

> A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.

*Am. Nat'l Bank & Trust Co. v. City of Chi.*, 735 N.E.2d 551, 557-58 (Ill. 2000) (citations omitted). Under this standard, where a landowner "takes no action to correct a condition even though it was informed about the dangerous condition *and* knew that other persons had previously been injured because of the dangerous condition," he may be liable for willful and wanton conduct. *Salazar v. Crown Enters.*, 767 N.E.2d 366, 371 (Ill. App. Ct. 2002) (citation

omitted and emphasis added). However, where there is no evidence that the landowner engaged in any intentional act or knew of other injuries/accidents caused by the allegedly dangerous condition, his conduct does not rise to the level of willful and wanton. *Id.* (citation omitted).

Here, Plaintiff has not argued that Defendants' conduct was intentional or that they otherwise knew of persons who had been previously injured by the cords/conduits, nor does the record contain any evidence to suggest as much. It follows that Defendants did not breach their duty of refraining from willfully and wantonly injuring Plaintiff, and his negligence claim necessarily fails.

Nonetheless, Plaintiff argues that there are special circumstances where a heightened duty to warn trespassers may be imposed:

> Even if Defendant's [sic] position would be true, Defendant knowing conduits and wires represent a risk to anyone upon its premises it [sic] would still have an obligation or duty to exercise ordinary care to worn [sic] Plaintiff Gary Belot of such dangerous conditions. *See Lee v. Chi. Transit. Auth.* 152. Ill. 2d 432, 448, 606 N.E.2d 493, 499 (1992) (applying the *Restatement (Second) of Torts § 337*). Consequently, Defendant would owe a duty to Plaintiff even if the Plaintiff was a trespasser, because Defendant knew about the dangerous condition, loose power cords and wire conduits scattered around its exercise equipment, and had plenty of reasons to anticipate a trespasser entering its facility to trip and be injured.

(Pl.'s Br. in Opp'n [Dkt. # 38] at 7.) Plaintiff may be correct about *Lee*'s principles, but he is mistaken about their application.

Section 337 of the Restatement, entitled "Artificial Conditions Highly Dangerous to Known Trespassers," provides that a possessor of land owes a duty to exercise reasonable care to warn a trespasser of an artificial condition upon the land which involves a risk of death or serious bodily harm. Restatement (Second) of Torts § 337. Yet as *Lee* explained, this heightened duty comes into play only if (1) the trespasser is in a "place of danger," and (2) the landowner knew or should have known of the trespasser's presence, and (3) the landowner should have

7

anticipated that the trespasser would not appreciate the risk. 606 N.E.2d at 449-501. None of these prongs is met in this case.

First, the condition Plaintiff tripped over was not a "place of danger" within the meaning of *Lee*, which concerned an unprotected, high-voltage electrified railway, located just a few feet from a pedestrian walkway. *Id*. That *Lee* applied the Restatement's "highly dangerous" exception is hardly surprising given that simply coming into contact with an electrified rail can be life threatening. Other Illinois courts have similarly focused on the risk of serious injury or death in applying this exception, but they have declined to expand it beyond typical places of danger, such as railroad tracks, exposed high-voltage lines, and risks of drowning. *See*, *e.g.*, *Eshoo v. Chi. Transit Auth.,* 723 N.E.2d 339, 334 (Ill. App. Ct. 1999); *Mostafa v. City of Hickory Hills*, 677 N.E.2d 1312, 1317 (Ill. App. Ct. 1997); *Miller v. General Motors Corp.,* 565 N.E.2d 687 (Ill. App. Ct. 1990).[6] The condition that injured Plaintiff, however, is nothing of the sort, and he has made no argument to persuade the Court otherwise (beyond the conclusory citation to *Lee* itself). Indeed, to characterize an extension cord as "highly dangerous" would expand *Lee* and its progeny far beyond their facts and otherwise swallow the rule into the exception, rendering virtually any condition "highly dangerous" and making the label "trespasser" practically meaningless for premises liability purposes — a move plainly inconsistent with Illinois law. *See Lee,* 606 N.E.2d at 499 (rejecting the plaintiff's argument to abolish the distinction between trespassers and invitees because "the [Illinois] legislature's recent iteration on the licensee/invitee classification [in the Premises Liability Act] and its determination to leave intact

---

[6] Illinois' Pattern Jury Instructions further support this interpretation: "An owner owes no duty to a trespasser . . . [beyond] a duty not to cause injury willfully and wantonly. . . . If, however, the [owner] knew or should have known that an artificial condition . . . presented a *risk of death or serious bodily injury* . . . then the [owner] had a duty to exercise ordinary care to warn of the condition." IPI 120.02.01 (citing *Lee*, 606 N.E.2d at 449).

the common law rule concerning trespassers . . . persuades us that society yet finds some benefit in retaining the trespasser classification").

Second, even if the Court were to characterize the extension cords as a place of danger, Plaintiff's argument would still fail because he has not shown that Defendants knew or should have of his presence. Defendants' actual knowledge of Plaintiff's presence is surely off the table, since it is undisputed that he did not notify anyone upon entering the gym. The only question, then, is whether Defendants should have known that he was trespassing. To this end, Plaintiff broadly argues that "Defendant knew about the dangerous condition, loose power cords and wire conduits scattered around its exercise equipment, and had plenty of reasons to anticipate a trespasser entering its facility to trip and be injured." (Pl.'s Br. in Opp'n [Dkt. # 38] at 7.) But this sort of conclusory statement, lacking a record cite, cannot create a triable issue on summary judgment, and, in any event, it would still fail under *Lee's* principles.

The court in *Lee* determined that the CTA should have known of trespassers near the electrified rail because (1) the CTA stipulated to such knowledge, (2) the rail was only a few feet from a busy public walkway, and (3) there was evidence of ten prior accidents over a similar segment of track. 605 N.E.2d at 501. Defendants' gym, in contrast, is a private business, Defendants have not admitted to knowing of any recurring trespasser problems or accidents, and Plaintiff has not provided any evidence from which a jury could infer such knowledge. The Court therefore has no basis to find that Defendants knew or should have known of Plaintiff's presence.[7]

This holding dovetails with the policy principles underlying *Lee* as well. By its own terms, *Lee* represented a "slight departure from the traditional rule regarding the duty owned to

---

[7] Given that the above reasons necessarily undermine Plaintiff's attempt to bring this case within the holding of *Lee*, and that his perfunctory argument (above) is all he offers on the subject, the Court need not address *Lee's* third prong.

trespassers." *Id.* Yet this departure is owed largely to the egregious facts of the case: the CTA in *Lee* did not put up any markings indicating that there was a third rail, much less with a live electric current, and there were no markings on the rail itself, making it "virtually indistinguishable" to the general public. *Id* at 452-53. Thus, *Lee* justified the shift from the traditional rule regarding trespassers because, "[i]n the choice of competing considerations of societal policy, the need for protection against the reasonably foreseeable risk of death or severe personal injury outweighs the freedom of action that would otherwise characterize the relation of the possessor of land to a trespasser." *Id.* (citation omitted). There are no similar policy concerns applicable to case: (1) the cords/conduits were not highly dangerous; (2) Defendants had no reason to expect that Plaintiff would ignore their policies and walk into the gym (a private business) on his own accord; and (3) Plaintiff testified that he saw some of the cords/conduits before he tripped and knew that he had to lift his leg to cross over them, which means he appreciated the risk posed by the cords to at least some degree, (*see* Pl.'s Dep. [Dkt. # 35, Ex. C] at 67:14-68:17; 75:12-18). Consequently, *Lee* is inapplicable, and the proper metric for judging Defendants' liability is the "willful and wanton" standard.

Therefore, the Court grants judgment in favor of Defendants on Count I. Similarly, because loss of consortium claims in Illinois depend on the validity of an injured spouse's claim, *see Bonavia v. Rockford Inc.*, 348 Ill. 808 N.E.2d 1131, 1139 (Ill. App. Ct. 2004), the Court grants judgment in favor of Defendants on Count II as well. Civil case terminated.

## **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' motion for summary judgment [33]. Civil case terminated.

**SO ORDERED.**                                      **ENTERED:  August 30, 2016**

_____
**HON. RONALD A. GUZMÁN**
**United States District Judge**